# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

**DONELSON CHRISTIAN ACADEMY, INC.**

    **Plaintiff,**

**v.**                                                  No. _____
                                                                **JURY DEMAND**

**THE CINCINNATI INSURANCE COMPANY
and HUB INTERNATIONAL MIDWEST
LIMITED INC. d/b/a HUB INTERNATIONAL
MID-SOUTH,**

    **Defendants.**

## COMPLAINT

COMES NOW the Plaintiff, Donelson Christian Academy, Inc., by and through counsel, and for its claims against the Defendants, The Cincinnati Insurance Company and HUB International Midwest Limited Inc., d/b/a HUB International Mid-South (sometimes individually by name and sometimes collectively as "Defendants"), would respectfully state and show to the Court as follows:

### PARTIES & JURISDICTION

1. The Plaintiff, Donelson Christian Academy, Inc. ("DCA"), is a corporation duly formed under the laws of the state of Tennessee. At all relevant times, DCA operated a private, Christian PreK-12 school located at and around 300 Danyacrest Drive, Nashville, Tennessee, as well as other locations owned/operated by DCA (the "Insured Premises").

2. The Defendant, The Cincinnati Insurance Company ("CIC"), is organized in the State of Ohio, has its headquarters in the State of Ohio, and is engaged in the insurance business

in the State of Tennessee.

3. Defendant HUB International Midwest Limited Inc. d/b/a HUB International Mid-South ("HUB") is a corporation organized under the laws of the State of Indiana, has its headquarters in the State of Illinois, and operates as an insurance producer in the State of Tennessee. At all relevant times, the agents and employees of HUB were acting within the ordinary course and scope of their employment with HUB as an insurance producer.

4. This Complaint originates as the result of a tornado that devasted the buildings and other insured structures and improvements located at the Insured Premises, and the Defendants' unlawful actions, including but not limited to: (1) CIC's failure and refusal to promptly and fully pay DCA's insurance claim; (2) CIC's wrongful denial of DCA's full claim for insurance proceeds; (3) HUB's failure to properly and appropriately procure coverage for the damaged property and improvements at the Insured Premises; and/or (4) CIC/HUB's wrongful refusal to honor the agreed-to coverage representations made by CIC and HUB, resulting in substantial loss and damage to DCA.

5. Diversity of citizenship exists pursuant to 28 U.S.C. § 1332 and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00. Venue is proper in this Court because the Insured Premises giving rise to the proceeds in controversy is located in Davidson County, Tennessee.

## FACTS

### The Policy

6. At all times relevant hereto, DCA was an insured pursuant to an insurance contract whereby CIC agreed to insure the school buildings, other structures, improvements, personal property, and other property located at the Insured Premises against property damage,

bearing Policy No. ETD 035 71 10 (the "Policy"). The Policy's term was November 1, 2019 to November 1, 2020. The written Policy actually issued by CIC is incorporated herein by reference as if set forth verbatim and is attached as ***Exhibit 1***.

7. The Insured Premises consisted of school campus and buildings utilized as a private, Christian school, other improvements such as athletic fields, stadium, bleachers, lighting, etc., and surrounding areas in which DCA's school was operated.

8. The Policy provided insurance coverage for accidental, direct physical loss to the structures, fixtures, and other improvements located on the Insured Premises, as well as coverage for damage to personal property resulting from accidental direct physical losses.

9. The Policy is an "all-risks" policy, meaning that the Policy covered all risks of accidental direct physical loss except for those specifically excluded by the Policy.

The Insurance Producer

10. HUB is a licensed insurance producer under the laws of the State of Tennessee and sells, solicits, and negotiates insurance in its ordinary course of business.

11. At all relevant times and for approximately the last twenty years, HUB served as the insurance agent/agency for DCA and was responsible for, among other things, assessing DCA's insurance needs, facilitating insurance planning, and obtaining/procuring full and adequate insurance coverage for the benefit of DCA, specifically including property insurance at the Insured Premises.

12. At all times relevant to this lawsuit, HUB promised and assured DCA that DCA's full insurable interest in all aspects of the Insured Premises was properly, fully, and adequately insured to the full cost of repairing or replacing the buildings and other structures insured, including but not limited to, the athletic fields and associated fixtures, stadium, bleachers,

3

Case 3:23-cv-00911    Document 1    Filed 08/25/23    Page 3 of 19 PageID #: 3

fencing, lighting, playground areas, etc.

13. In an October 2019 renewal meeting with a HUB employee/agent, DCA and HUB reviewed the Statement of Values associated with the Policy, which listed certain insured structures at the Insured Premises.

14. During that meeting, DCA specifically asked HUB whether the Policy insured, and otherwise provided insurance coverage, for all structures and improvements at the Insured Premises, including but not limited to, the athletic fields and associated fixtures, stadium, bleachers, fencing, lighting, playground areas, etc., in the event of a catastrophic loss.

15. HUB responded that the Statement of Values did not have to be so granular as to include every single insured item (bleachers, athletic fields and fixtures, etc.), and specifically represented that all such collateral items were fully covered.

16. HUB specifically represented, promised, and assured DCA that the insurance coverage obtained from CIC would adequately cover DCA's interests in all structures, improvements, and fixtures (and specifically including those listed in paragraph 31 below) in the event of an insured catastrophic loss.

17. DCA reasonably and justifiably relied on HUB's assurances and recommendations.

18. HUB is comprised of insurance professionals who have specialized and superior training, information, education, and knowledge concerning insurance matters as compared to DCA. HUB professes to the public a specialty in procuring appropriate and adequate insurance coverage for individuals, associations, and businesses with complex risks, and has held itself out as an insurance professional who was willing and able to procure such insurance coverage for DCA.

4

Accordingly, DCA relied on HUB to do as it promised and to eliminate the risk of absent or inadequate insurance coverage.

19. At all relevant times, HUB was in a fiduciary relationship with DCA. DCA put a special trust and confidence in HUB, and HUB undertook to assume responsibility for the insurance related affairs of DCA as it related to the Insured Premises. DCA relied heavily upon the expertise of HUB because of the specialized knowledge that is required to appreciate and understand all the intricacies of insurance-related matters. Accordingly, HUB had a duty to act and give correct and sound advice and guidance to DCA on matters within the scope of their relationship.

20. At the direction and instruction of DCA to HUB, HUB knew that DCA desired full replacement cost coverage sufficient to fully and adequately insure the Insured Premises, including all improvements on the property, in the event of a catastrophic loss. HUB agreed to procure such coverage to protect DCA's interest, and HUB assured DCA that the Insured Premises was fully and appropriately insured through CIC.

21. At all times relevant hereto, HUB had CIC's authority to solicit insurance products, to make changes to insurance coverage, and to set limits on coverage on behalf of CIC.

22. DCA and HUB/CIC were in a contractual relationship as customer/insurance service provider and/or customer/insurance provider, pursuant to which HUB/CIC agreed to provide DCA with professional services and adequate and appropriate insurance coverage. DCA, in turn, promised to pay for such service and insurance coverage.

23. Pursuant to Tenn. Code Ann. § 56-6-115(b), HUB was an authorized agent for CIC as it relates to any controversies arising from any CIC policy negotiated, solicited, or issued by HUB, and CIC is vicariously liable for the wrongful acts or inactions of HUB. As a matter of law,

CIC is estopped to deny liability on a matter arising out of the negligence or mistake of HUB, and if either DCA or CIC has to suffer from HUB's mistake, it must be CIC. It was the duty of HUB and CIC to exercise due diligence to supply DCA with an insurance policy which would accomplish the intended purpose, *i.e.*, to fully indemnify DCA in the event of a loss to the Insured Premises. Damage caused by HUB and/or CIC's mistakes or negligence in failing to make inquiries that they should have known to be pertinent or to take all required actions to accomplish the intended purpose rests on HUB and CIC—not DCA. When an insurance company or its agent obtains a policy for an insured which is known, or should be known, to be defective, such conduct is a representation that the policy is valid and effective for the purpose intended. *Allstate v. Tarrant*, 363 S.W.2d 508, 519-521 (Tenn. 2012).

24. Moreover, *any* contractual provision within an insurance policy, whether part of an insuring, exclusionary, or forfeiture clause, may be waived by acts, representations, or knowledge of the insurer's agent. Here, for many years preceding the Loss, as representatives of CIC and on behalf of DCA, HUB procured insurance coverage on the Insured Premises. At each renewal, HUB knew that the coverage desired by DCA included, but was not limited to, coverage for damage to the structures that comprise its school, as well as coverage for the athletic fields, stadium, bleachers, lighting, etc., such that, in the event of a catastrophic loss, the Insured Premises could be totally and completely repaired or rebuilt with insurance proceeds. HUB represented to DCA, expressly or impliedly, that the coverage in place was adequate and sufficient to fully replace all of these improvements at the Insured Premises. DCA reasonably and justifiably relied on those representations.

25. When CIC issued the Policy to DCA, CIC agreed to insure the Insured Premises against direct physical loss or damage, as well as additional coverages pursuant to the terms and conditions of the Policy.

26. Based on and in reliance on the representations of HUB that adequate coverage was in place, DCA paid the insurance premiums necessary to maintain the Policy. Pursuant to the Policy, DCA was required to pay a premium to CIC in exchange for the insurance coverage. DCA paid all required premiums at all relevant times.

<u>The Loss & Claim Investigation</u>

27. On or about March 3, 2020, an F-3 tornado damaged and/or destroyed the buildings located at the Insured Premises, including the school buildings, stadium, athletic fields, bleachers, lighting, etc., resulting in catastrophic damage (the "Loss").

28. DCA promptly reported the Loss to CIC/HUB.

29. DCA fulfilled all of the duties after the Loss that were imposed upon it by the Policy.

30. Following the Loss, CIC opined that the insurance coverage afforded by the Policy was inadequate, and that portions of the Insured Premises, such as the athletic fields, stadium, bleachers, lighting, etc., were not covered under the Policy of insurance procured by HUB and issued by CIC.

31. Specifically, CIC declared that the following, non-exclusive list of damaged items were not insured at time of the Loss: (1) Football Field (and associated fixtures – goal posts, visitor metal bleacher replacement; rails on concrete bleachers, home bleacher repairs, visitor bleachers concrete repair, scoreboard, lighting); (2) Baseball Field (and associated fixtures – elevated bleachers and decking, flagpole, baseball backstop poles and netting, backstop wall,

batting cage, foul poles, scoreboard, lighting); (3) Practice Field (associated fixtures – 40 second clock); (4) Soccer Field (and associated fixtures – flagpole, film tower, electrical power control for field lighting and irrigation, netting behind soccer goals, team bench awnings and structures; (5) Softball Field (and associated fixtures – bleachers, flagpole, foul poles, backstop poles and netting, backstop wall, signage and columns, batting cage, scoreboard, lighting; (6) Irrigation for three athletic fields (football, baseball, softball) and irrigation at main entrance; (7) All athletic fields; (8) Fencing (entrance including ornamental fencing, brick columns, custom arch gates, and sliding gates, soccer field fencing, fence between football field and baseball field, fence around the football field, football bleacher fencing, parking lot fencing, tennis court fencing, elementary playground fencing, softball field fencing, baseball field fencing, and river fence); and (9) Playground Area (teacher pavilion, walking bridge over drainage ditch).

32. The above items are specific structures and improvements that HUB represented were covered under the Policy procured by HUB and issued by CIC, and these representations are imputed to CIC and all such items must be covered by the Policy as a matter of law in light of the representations of HUB, CIC, and their agents..

33. All of the items listed in paragraph 31 (except for the teacher pavilion) have been repaired and/or replaced at a cost of more than $1.7 Million. Additionally, DCA has incurred construction loan interest and other consequential damages.

34. HUB and CIC knew, or should have known, that the DCA would, in fact, repair or replace all structures and improvements at the Insured Premises in the event of a Loss due to the use of the Insured Premises as functioning PreK-12 school.

The Loss is Compensable Under the Policy

35. The Policy was in full force and effect at the time of the Loss.

36. The Loss is compensable under the terms of the Policy promised by HUB and CIC. As it relates to the Loss, there are no applicable exclusions or limitations.

37. DCA fulfilled all duties imposed upon it by the Policy.

38. Even though DCA fulfilled all duties imposed upon it by the Policy and is at no fault in this matter, CIC and/or HUB have wrongfully failed and refused to fully and promptly pay DCA's full claim for insurance proceeds.

39. At the time of the Loss and thereafter until DCA learned of the insufficient coverage provided under the Policy, DCA reasonably believed that it was appropriately and adequately insured against damage to the Insured Premises, including all structures, improvements, and fixtures, as had been requested of, promised by, and assured by HUB and CIC.

40. At all times before the Loss, DCA reasonably relied on HUB and CIC's representations that the Insured Premises, including that all structures, fixtures, and improvements were appropriately and properly insured.

41. DCA relied on HUB and CIC to obtain the appropriate insurance coverage for DCA's needs. If DCA had known prior to the Loss that the Insured Premises, including all structures and improvements, was not properly insured, DCA would have taken the steps necessary to ensure the implementation of appropriate coverage.

42. HUB and CIC's failure to procure the appropriate insurance left DCA grossly underinsured and has caused DCA substantial damage.

43. CIC/HUB's refusal to pay DCA the full amounts owed under the Policy is without justification and constitutes a breach of contract.

44. As a direct and proximate cause of CIC/HUB's breach of contract, DCA has sustained substantial compensable losses, including all amounts due DCA under the Policy.

45. CIC/HUB's conduct, as discussed in detail above and below, falls significantly below the professional standards of service and care that CIC and HUB had promised to provide to DCA, and for which DCA, as a customer, had paid.

46. CIC/HUB's refusal to pay the money and benefits due and owing DCA under the Policy caused DCA to seek legal counsel, and to initiate this Complaint[1] to recover the insurance proceeds and/or other Policy benefits to which they are entitled.

## CAUSES OF ACTION

### Count I -- Breach of Contract (Against CIC)

47. The allegations contained in the preceding paragraphs of this Complaint are incorporated herein by reference, as if set forth verbatim.

48. The Policy issued by CIC, as modified as appropriate pursuant to the representations of HUB and CIC before the Policy was issued, was a binding contract and is supported by valid consideration.

49. CIC is in total, material breach of the Policy and is liable to DCA in the maximum amount allowed by the Policy for the Loss. Specifically, CIC's breach of contract includes the following, without limitation: (a) failure and refusal to pay the amounts owed to DCA for the damage to structures, fixtures, and other improvements afforded by the Policy, as modified as appropriate pursuant to the representations of HUB and CIC before the Policy was issued; and (b) failure and refusal to pay such other amounts to DCA as may be required by the Policy as modified.

---

[1] The Parties entered into a Tolling Agreement on February 25, 2022, which was extended by agreement until August 28, 2023.

50. As a result of CIC's breach of contract, DCA has sustained substantial, compensable losses for the amounts claimed under the Policy, including but not limited to, the replacement cost of the damage to the school buildings, improvements, fixtures, other insured structures, and consequential damages.

51. CIC is liable to DCA for its losses.

**Count II – Breach of Contract / Failure to Procure (Against HUB)**

52. The allegations contained in the preceding paragraphs of this Complaint are incorporated herein by reference, as if set forth verbatim.

53. DCA had a valid and binding contract with HUB for the procurement of an appropriate insurance policy that would adequately and properly insure the Insured Premises against casualty losses. HUB agreed to procure DCA appropriate and adequate insurance coverage in a fashion that would fully indemnify DCA for the full repairs or replacement of all structures, fixtures, and improvements at the Insured Premises in the event of a loss, including those listed in Paragraph 31 above.

54. HUB agreed under this contract, in part, to procure DCA appropriate and proper casualty insurance on the Insured Premises, including its structures and all improvements, and to ensure professional and timely service. DCA, in turn, agreed to pay for this level of service and coverage. Although HUB did, in fact, procure the Policy that was in effect at the time of the Loss, the Policy was materially insufficient to cover DCA's losses.

55. HUB failed to utilize reasonable care and diligence in obtaining the necessary insurance and failed to procure insurance with the appropriate coverage. Because HUB failed to notify DCA of the lack of adequate insurance coverage and because of DCA's reasonable

reliance on the skills, diligence, and expertise of HUB, represented to it by HUB, DCA believed it was appropriately and adequately insured at all times.

56. As a result, DCA pleads that HUB is in total, material breach of its contract to procure and provide DCA with full and adequate insurance coverage for the benefit of DCA.

57. HUB's failure to procure the appropriate coverage and to provide the level of service contracted for (*i.e.*, its failure to appropriately and adequately insure all insurable aspects of the Insured Premises) is a material breach of the contract, and HUB is liable to DCA for the lack of adequate coverage at the Insured Premises that was damaged during the Loss.

58. As a result of HUB's breach, DCA has sustained substantial, compensable losses—namely, the difference between the amount of coverage provided in the Policy for the Insured Premises at the time of the Loss, and the amount that would have properly insured the Insured Premises at the time of the Loss, plus other numerous and assorted incidental and consequential damages which will be shown at trial.

**Count III – Negligence / Negligent Misrepresentation / Tortious Failure to Procure / Breach of Fiduciary Duty (Against HUB)**

59. The allegations contained in the preceding paragraphs of this Complaint are incorporated herein by reference, as if set forth verbatim.

60. HUB is liable to DCA for negligence, negligent misrepresentation, failure to procure appropriate and adequate insurance coverage, and breach of fiduciary duty.

61. For many years, HUB, and its employees and agents, have provided insurance and risk management services to DCA. Throughout the course of its dealings with DCA, HUB held itself out as a skilled insurance professional, having superior knowledge regarding its ability to procure a myriad of insurance policies for DCA. HUB intended that DCA rely, and DCA did rely, on HUB's alleged expertise and advice in connection with DCA's insurance matters.

62. DCA looked to HUB to obtain the insurance coverage needed to appropriately and sufficiently insure the Insured Premises, including all structures and improvements, among other things. HUB agreed, and DCA expected, that DCA would be provided appropriate and adequate insurance coverage by a sound company which could, and would, properly and promptly pay and honor valid claims when they are made. It was HUB's duty to keep DCA fully informed and advised and to take such actions as might be necessary to keep the Insured Premises properly insured at all times. In exchange, HUB was paid for these services.

63. In providing the aforementioned and hereafter referenced services to DCA, HUB and HUB's employees/agents/authorized representatives were acting within the ordinary course and scope of their business.

64. DCA engaged HUB to procure appropriate and adequate insurance on the Insured Premises, and it reasonably relied upon HUB to take whatever steps might be necessary to procure the appropriate insurance coverage.

65. HUB failed to utilize reasonable diligence in obtaining the necessary insurance and failed to procure insurance with the appropriate coverage for the additional improvements at the Insured Premises, such as the stadium, athletic fields, bleachers, lighting. Etc. Because HUB failed to notify DCA of the lack of appropriate insurance coverage and because of DCA's reasonable reliance on the skills, diligence, and expertise of HUB, as represented to it by HUB, DCA believed it was appropriately and adequately insured at all times.

66. HUB's express and implied representations to DCA and its representatives, which were intended to guide DCA in its business decisions concerning obtaining insurance coverage, justifiably and reasonably warranted DCA's actual reliance on the representations that it was properly insured. HUB's representations that DCA was appropriately insured were false,

constitute a misrepresentation by HUB, and demonstrate that HUB failed to exercise reasonable care in obtaining or communicating to DCA an accurate portrayal of the nature and extent of the insurance coverage on the Insured Premises.

67. One who holds himself out to the public as an insurance professional is required to have the degree of skill, knowledge, and diligence requisite to the calling. When engaged by a member of the public to obtain insurance, the law holds such person to the exercise of good faith and reasonable skill, care, and diligence in the execution of the commission. He or she is expected, and indeed required, to possess reasonable knowledge of the types of policies, their different terms, and the coverage available in the areas in which the customer needs protection. If the coverage obtained is deficient because of his or her failure to exercise the requisite skill or diligence, he or she becomes liable to the customer for the loss sustained.

68. It is the universal rule that an agent who is compensated for his or her services and undertakes to procure insurance for another, and unjustifiably fails, will be held liable for any damage resulting.

69. The standard of care applicable to HUB required that HUB: (1) determine the risk exposures faced by DCA; (2) evaluate DCA's insurance needs and make such inquiries as may be necessary to obtain sufficient information to determine those needs; and (3) recommend coverage with appropriate policy language and full and adequate coverage with a sound insurer.

70. HUB also owed DCA a duty: (1) to procure adequate insurance coverage based on DCA's needs; (2) to counsel and guide DCA concerning its insurance needs; (3) to act with reasonable skill, care, and diligence in securing appropriate and adequate insurance coverage for DCA; (4) to give reasonable information and instructions concerning DCA's insurance needs and to make such inquiries as may be appropriate to ensure that DCA is adequately insured; (5) and

to act as a reasonably prudent insurance professional. HUB also owed DCA a duty to exercise due diligence to supply DCA a policy which would effect the purpose intended—*i.e.*, to fully indemnify DCA in the event of a loss to any or all structures and improvements at the Insured Premises.

71. HUB breached the applicable standard of care and each of the above duties.

72. HUB promised to provide DCA appropriate and adequate insurance coverage, and DCA justifiably and reasonably relied on HUB's representations, skill, and expertise to its detriment. HUB failed to procure the proper coverage on the Insured Premises, despite HUB's promises and representations that DCA was adequately insured for all structures and improvements. This failure resulted in DCA being improperly insured at the time of the Loss and constitutes a negligent misrepresentation by HUB.

73. Additionally, HUB was negligent in failing to adequately train and supervise its employees/agents, for whose actions HUB is vicariously liable.

74. HUB breached the fiduciary duty owed to DCA by failing to fulfill its responsibility and obligation to adequately insure DCA's property.

75. HUB's negligence, negligent misrepresentations, failure to procure adequate insurance coverage, and breach of fiduciary duty is the cause-in-fact, legal, and proximate cause of DCA's damages.

76. As a result of HUB's negligence, negligent misrepresentation, failure to procure adequate insurance coverage, and breach of fiduciary duty, DCA lacked adequate insurance coverage at the time of the Loss, has suffered, and will continue to suffer substantial damages.

**Count IV – Negligence & Negligent Misrepresentation (Against CIC)**

77. The allegations contained in the preceding paragraphs of this Complaint are

incorporated herein by reference, as if set forth verbatim.

78. CIC is vicariously liable for the actions, inactions, representations, and misrepresentations of its agent, HUB, as set forth in the paragraphs above, and is liable to DCA to the same extent as HUB, as set forth in Count III above, all of which is incorporated herein by reference and pled specifically against CIC.

79. By and through its authorized agents and representatives, CIC was acting in its ordinary business capacity as an insurance company at the times that it supplied false information to DCA when it misrepresented to DCA that the coverage under the Policy included all structures and improvements, including but not limited to, the stadium, athletic fields, bleachers, lighting. Etc. These representations were intended by CIC to guide DCA in its business decisions concerning obtaining insurance coverage. Such representations justifiably warranted DCA's reliance on CIC's representations that it was properly insured. CIC's representations that DCA was appropriately insured were false, and CIC failed to exercise reasonable care in communicating to DCA that it would ensure that the Insured Premises was appropriately and adequately insured. DCA actually, justifiably, and reasonably relied on the representations of CIC and has been damaged as a result thereof.

80. Under the circumstances, the standard of care applicable to CIC required that CIC determine the appropriate insurance coverage needed to adequately insure the Insured Premises, including all structures and improvements. CIC also owed DCA a duty to exercise due diligence to supply DCA a policy which would effect the intended purpose—*i.e.*, to fully indemnify DCA in the event of a loss to any or all structures and improvements at the Insured Premises.

81. CIC breached the applicable standard of care and the duties owed to DCA. Specifically, CIC failed to reasonably, adequately, and properly value the Insured Premises and

16

Case 3:23-cv-00911   Document 1   Filed 08/25/23   Page 16 of 19 PageID #: 16

failed to provide the proper coverage for the Insured Premises. This failure resulted in DCA being improperly insured at the time of the Loss (according to CIC) and constitutes a negligent misrepresentation by CIC.

82. Additionally, CIC was negligent in failing to adequately hire, train, and supervise its employees/agents, specifically including but not limited to HUB, for which CIC is vicariously liable.

83. CIC's negligence, negligent misrepresentations, and failure to procure adequate insurance coverage is the cause-in-fact, legal, and proximate cause of DCA's damages.

84. As a result of CIC's negligence, negligent misrepresentation, and failure to procure appropriate insurance coverage, DCA lacked adequate insurance coverage at the time of the Loss, has suffered, and continues to suffer substantial damages.

**Count V – Reformation (Against CIC)**

85. The allegations contained in the preceding paragraphs of this Complaint are incorporated herein by reference, as if set forth verbatim.

86. Reformation of contract is an equitable remedy applicable to insurance contracts where there is a mutual mistake of the parties. DCA invokes this Court's equitable powers and seek reformation of the Policy issued by CIC to DCA.

87. The remedy of reformation is necessary to carry out the true intent of the parties. DCA sought complete insurance coverage against casualty losses of the Insured Premises, including all structures, improvements, and fixtures, and specifically including those listed in paragraph 31 above. CIC and its agents, including but not limited to HUB, knew that DCA desired full, complete, and adequate insurance coverage for the Insured Premises as described in this Complaint, and CIC and its agents/representatives promised such coverage.

88. Accordingly, CIC is estopped from denying that insurance coverage exists for the entirety of the Insured Premises, including all structures and improvements, that were damaged and/or destroyed as a result of the Loss. There was a meeting of the minds that CIC would insure the Insured Premises, including all structures, fixtures, and improvements as described in this Complaint, but CIC contends that the Policy does not express what was really intended by the parties. According to CIC, the Insured Premises was improperly insured at the time of the Loss. If true, this was due to the mistake of CIC in failing to properly include appropriate coverage for improvements at the Insured Premises (such as the athletic fields, stadium, bleachers, lighting, etc. as referenced in paragraph 31 above), as promised by CIC and its agents.

89. There was a mistake in the issuance, quoting, and/or drafting of the Policy which rendered its terms different than those agreed upon by the parties. As such, the Policy should be reformed to include the entirety of the Insured Premises that was damaged and/or destroyed as a result of the Loss, including all structures and improvements such as the stadium, bleachers, athletic fields, lighting, etc.

WHEREFORE, as a result of the foregoing, DCA would respectfully request that proper process be issued and served on the Defendants, requiring them to answer or otherwise respond in the time period allotted by law, and that this Honorable Court award a judgment against the Defendants as follows:

A. For compensatory damages against both Defendants in an amount to be determined by a jury;

B. For reformation of the Policy to include full coverage for the entirety of the Insured Premises that was damaged or destroyed as a result of the Loss, including

all structures and improvements located on the Insured Premises, as described in this Complaint;

C. For all costs incurred as a result of this action;

D. For discretionary costs, pre- and post-judgment interest;

E. That costs be taxed to Defendants; and

F. For such other further and general relief as this Court deems just and equitable.

## JURY DEMAND

DCA demands a jury.

Respectfully submitted,

McWHERTER SCOTT BOBBITT PLC

s/ *J. Brandon McWherter*
J. BRANDON McWHERTER #21600
brandon@msb.law
JONATHAN L. BOBBITT #23515
jonathan@msb.law
341 Cool Springs Blvd., Suite 230
Franklin, Tennessee 37067
Telephone: (615) 354-1144

*Attorneys for Donelson Christian Academy, Inc.*